**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

THOMAS F. HEBERT, ET AL.                    CIVIL ACTION NO. 15-1706

VERSUS                                                  JUDGE ELIZABETH ERNY FOOTE

TITAN INTERNATIONAL, INC., ET AL.        MAGISTRATE JUDGE HANNA

## MEMORANDUM ORDER

Plaintiffs, Thomas and Dawn Hebert, brought this products liability suit against Defendant, Titan International, Inc. ("Titan"), arising out of an incident involving Thomas Hebert ("Hebert") in July 2014. Hebert alleged that on that date he was asked by his employer to inflate a tire on a multi-piece wheel manufactured by Titan. While inflating the tire, the multi-piece wheel explosively separated, causing the wheel components to strike Hebert in the head and torso area. As a result, he suffered serious injuries, including a face fracture, a cervical spine injury, and a brain injury. Plaintiffs filed suit against Titan under the Louisiana Products Liability Act ("LPLA"), alleging that the multi-piece wheel was unreasonably dangerous due to defective design and an inadequate warning. Dawn Hebert also asserted a claim for loss of consortium. A jury trial was held from August 14-21, 2017, resulting in a judgment in favor of Defendant, Titan. Now pending before the Court is Plaintiffs' Motion for Judgment Notwithstanding the Verdict ("JNOV"), or, Alternatively, For New Trial [Record Document 200].

**STANDARD**

The Fifth Circuit has held that a court exercising diversity jurisdiction must apply Louisiana law to JNOV and new trial motions. Brown v. Wal-Mart Louisiana, L.L.C., 565 F. App'x 293, 295 (5th Cir. 2014) (citing Fair v. Allen, 669 F.3d 601, 604 (5th Cir. 2012)). Under Louisiana law,

> [A] JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.

Joseph v. Broussard Rice Mill, Inc., 2000-0628 (La. 10/30/00), 772 So. 2d 94, 99 (internal citations omitted).

Louisiana Code of Civil Procedure article 1972 provides that a new trial "shall be granted . . . [w]hen the verdict or judgment appears clearly contrary to the law and the evidence." "Unlike the standard applicable to a JNOV, in considering whether to grant a new trial under La. C.C.P. art. 1972(1), a trial judge may evaluate the evidence without favoring either party, and draw its own inferences and conclusions." Pitts v. Louisiana Med. Mut. Ins. Co., 2016-1232 (La. 3/15/17), 218 So. 3d 58, 66. Additionally, under Louisiana Code of Civil Procedure article 1973, a court has the discretionary authority to grant a new trial "in any case if there is good ground therefor, except as otherwise provided by law."

"When the trial judge is convinced by his examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered pursuant to La. C.C.P. art. 1973." Pitts, 218 So. 3d at 65. However, the Louisiana Supreme Court has also stated:

> The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility.

Davis v. Wal-Mart Stores, Inc., 2000-0445 (La. 11/28/00), 774 So. 2d 84, 93 (quoting Gibson v. Bossier City Gen. Hosp., 594 So. 2d 1332, 1336 (La. Ct. App. 1991)).

## LAW & ANALYSIS

Plaintiffs move for JNOV on the grounds that the jury's verdict was against the weight of the evidence. Plaintiffs previously moved for judgment as a matter of law on three specific issues that it raises again here: (1) whether Plaintiffs' damages arose from a "reasonably anticipated use" of the product; (2) whether there was an alternative design for the product; and (3) whether Plaintiffs' damages were proximately caused by a characteristic of the product. Plaintiffs insist these issues should have never been submitted to the jury. Alternatively, Plaintiffs move for a new trial on the grounds that the jury's verdict was against the weight of the evidence and because evidence of Hebert's positive drug screen was admitted.

A.    JNOV

Plaintiffs' claims arise under the LPLA, which sets forth the exclusive theories of liability for manufacturers for damage caused by their products.  La. R.S. § 9:2800.52.  The Act provides, "The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity."  § 2800.54(A). As explained by the Fifth Circuit,

> To maintain a successful products liability action under the LPLA, a plaintiff must establish four elements: (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous"; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.

Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 260-61 (5th Cir. 2002). A product may be unreasonably dangerous in one of four ways: (1) construction or composition, (2) design, (3) inadequate warning, and (4) failure to conform to an express warranty.  § 2800.54(B).  Here, Plaintiffs argued that the wheel was unreasonably dangerous in design and due to an inadequate warning.

As to the design claim, the LPLA provides,

> A product is unreasonably dangerous in design if, at the time the product left its manufacturer's control:

> (1) There existed an alternative design for the product that was capable of preventing the claimant's damage; and

(2) The likelihood that the product's design would cause the claimant's damage and the gravity of that damage outweighed the burden on the manufacturer of adopting such alternative design and the adverse effect, if any, of such alternative design on the utility of the product. An adequate warning about a product shall be considered in evaluating the likelihood of damage when the manufacturer has used reasonable care to provide the adequate warning to users and handlers of the product.

§ 2800.56.

As it relates to an inadequate warning, "A product is unreasonably dangerous because an adequate warning about the product has not been provided if, at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." § 2800.57(A). However, a manufacturer is not required to provide an adequate warning about the product if:

(1) The product is not dangerous to an extent beyond that which would be contemplated by the ordinary user or handler of the product, with the ordinary knowledge common to the community as to the product's characteristics; or

(2) The user or handler of the product already knows or reasonably should be expected to know of the characteristic of the product that may cause damage and the danger of such characteristic.

§ 2800.57(B).

Notably, reasonably anticipated use is a required element Plaintiffs must prove regardless of which unreasonably dangerous theory they choose to pursue. The LPLA defines "reasonably anticipated use" as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar

circumstances." § 2800.53(7). "If a plaintiff's damages did not arise from a reasonably anticipated use of the product, then the 'unreasonably dangerous' question need not be reached." Kampen v. Am. Isuzu Motors, Inc., 157 F.3d 306, 309 (5th Cir. 1998). This is because a manufacturer is not responsible for "every conceivable foreseeable use of a product." Id. at 309-10. Furthermore, the LPLA's "reasonably anticipated use" standard has been contrasted with the pre-LPLA "normal use" standard, which included "all reasonably foreseeable uses and misuses of the product." Id. at 309 (citation omitted). Additionally, "'knowledge of the potential and actual intentional abuse of its product does not create a question of fact on the question of reasonably anticipated use.'" Payne v. Gardner, 2010-2627 (La. 2/18/11), 56 So. 3d 229, 231 (quoting Butz v. Lynch, 99–1070 (La. App. 1 Cir. 6/23/00), 762 So. 2d 1214, 1218).

This Court previously found that Titan introduced sufficient evidence for a jury to find that Hebert's use of the wheel was not reasonably anticipated, and the Court will not disturb that conclusion. Record Document 211, p. 19. It is not entirely clear how Plaintiffs characterize Hebert's use of the product, but evidence was presented throughout the case that the wheel was either improperly assembled, inflated without a fully seated lock ring, or assembled without all of its parts. See Record Documents 200-1, p. 21; 203, pp. 7-8; 67, pp. 6-7; 211, pp. 73-75; 207, pp. 49-50, 205-06. Therefore, as an initial matter, evidence was presented that Hebert was not using the product exactly as intended, and this is a factor the jury could consider in determining whether his use was reasonably anticipated. Additionally, the jury heard A.J. Hebert's testimony that he knew wheels could

explosively separate and previously used safety cages as a precautionary measure. Record Document 207, p. 48. A.J. Hebert also testified that Thomas Hebert positioned himself in front of the tire in a squatting position while inflating it. Id. at 52. The jury heard testimony regarding how to properly assemble the wheel and was shown safety information explaining assembly procedures, tools to be used, and safety precautions to be followed. See Record Document 209, pp. 222-28, 234-36.  One such safety precaution was not to stand in front of the tire while inflating it. Record Documents 209, p. 224; 197-2, p. 6. The jury also heard testimony on the warnings Titan provided, and the adequacy of a warning can weigh on the reasonably anticipated use question. See Kampen, 157 F.3d 306; Lockart v. Kobe Steel Ltd. Const. Mach. Div., 989 F.2d 864 (5th Cir. 1993). Plaintiffs argue that no evidence was presented that Hebert himself was provided a warning. However, in Lockart v. Kobe Steel Limited Construction Machinery Division, the Fifth Circuit noted that "the owners manual and thus the warning probably never reached the ultimate users," and yet still found that "under the circumstances an adequate warning was provided." Lockart, 989 F.2d at 866-68. Finally, Plaintiffs argue that Titan's corporate representative admitted that Hebert's use was reasonably anticipated, but the Court does not find the cited testimony to be dispositive of the issue. Plaintiffs cite the following exchange between Plaintiffs' counsel and David Kuhl, Titan's corporate representative:

> Q.     All right. Mr. Kuhl, it was foreseeable to Titan that a multi-piece wheel could be improperly assembled; correct?
> A.     Yes.
> Q.     It was foreseeable to Titan that a tire on a multi-piece wheel could be inflated without the lock ring being fully seated; correct?
> A.     Yes.

| Q. | It was foreseeable, meaning reasonably anticipated, by Titan that can happen? |
|---|---|
| A. | It can happen, yes. |
| Q. | It's reasonably anticipated by Titan that it can happen; correct? |
| A. | Yes. |
| Q. | It was foreseeable to Titan that a multi-piece wheel could be assembled without all of its parts; correct? |
| A. | Yes. |
| Q. | And again, same definition of foreseeable, reasonably anticipated by Titan that that can happen, correct? |
| A. | It can happen, yes. |
| Q. | All of these things were foreseeable to Titan before they manufactured and sold the wheel involved in this case; correct? |
| A. | Yes. |

Record Document 208, pp. 188-89. During this exchange, Plaintiffs' counsel plainly defined

"reasonably anticipated" as simply "foreseeable," but that is not the appropriate standard.

It might be foreseeable to a manufacturer that someone would use its product in a

particular way, but that does not necessitate a finding that the use was reasonably

anticipated. See Matthews v. Remington Arms Co., 641 F.3d 635, 647 (5th Cir. 2011) ("Of

course, it was 'reasonably foreseeable' that a user might drop the bolt-assembly pin during

reassembly, as evidenced by the instruction from Remington to its assembly workers to

keep a finger beneath the bolt-assembly-pin hole during the initial assembly; however, that

is not the LPLA standard."); Lockart, 989 F.2d at 867 (noting that "virtually any conceivable

use is foreseeable"). Therefore, while the jury was free to consider David Kuhl's testimony

in deciding whether Hebert's use was reasonably anticipated, his testimony did not

necessarily resolve this issue in favor of Plaintiffs.[1]

---

[1] The Court made this same finding on the record when ruling on Plaintiffs' initial motion for judgment as a matter of law. See Record Document 211, pp. 16-19. The Court sees no error in its prior ruling.

Reasonably anticipated use is a threshold issue on which Plaintiffs bore the burden of proof. The Louisiana Supreme Court has instructed that a motion for JNOV should be denied if "there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions." Joseph, 772 So. 2d at 99 (citing Scott v. Hosp. Serv. Dist. No. 1 of St. Charles Par., 496 So. 2d 270, 274 (La. 1986)). Here, the Court finds that evidence was presented at trial that would allow reasonable and fair-minded jurors to reach different conclusions on the issue of reasonably anticipated use. Because a reasonable and fair-minded juror could have found that Hebert's use was not reasonably anticipated, a reasonable and fair-minded juror could have returned a verdict in favor of Defendant.

Additionally, Plaintiffs moved for judgment as a matter of law on the issue of whether there was an alternative design available for the multi-piece wheel assembly. Record Document 210, p. 151. At trial, Plaintiffs argued that the single-piece wheel was an alternative design. The complete element, which forms part of Plaintiffs' design claim, is that "[t]here existed an alternative design for the product that was capable of preventing the claimant's damage." La. R.S. § 9:2800.56. As the Court previously explained, evidence was presented at trial that single-piece and multi-piece wheels are used for different purposes and a consumer might choose one design over another due to differences in utility. See Record Documents 210, pp. 162-63; 209, pp. 198-203. The jury also heard testimony regarding hazards posed by single-piece wheels, including testimony from Plaintiffs' expert witness that single-piece rims, like multi-piece, can cause injury or death

under certain circumstances. Record Documents 209, pp. 230-32, 237; 207, pp. 273-74. Therefore, and as previously explained by the Court, reasonable jurors could have found for Defendant on this issue.

Finally, Plaintiffs moved for judgment as a matter of law on the issue of whether Hebert's damages were proximately caused by a characteristic of the product. Record Document 210, p. 152. The LPLA provides that a "manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous . . ." La. R.S. § 9:2800.54. As the Court noted when ruling on Plaintiffs' initial motion, significant issues of fact remained to be decided regarding whether a characteristic of the product rendered the wheel assembly unreasonably dangerous. Record Document 210, pp. 164-65. Furthermore, the Court suggested that Plaintiffs' motion attempted to over-simplify Hebert's role in the accident. See Pickett v. RTS Helicopter, 128 F.3d 925, 929 (5th Cir. 1997). Plaintiffs' expert witness opined that the explosive separation was caused by the lock ring not being fully seated. Record Document 207, p. 126. That expert further testified that when the wheel is properly assembled, it will perform as intended. Id. at 229, 249. Thus, the jury could consider Hebert's actions and evidence regarding potential improper assembly in determining the proximate cause issue. The Court sees no error in submitting this issue to the jury for consideration.

Because reasonable jurors could have resolved these issues in favor of Defendant, Plaintiffs' motion for JNOV is **DENIED**.[2]

---

[2] The Court would reach the same conclusion under the federal standard for renewed judgment as a matter of law under Federal Rule of Civil Procedure 50(b). See

B.    New Trial

Plaintiffs move for a new trial on the grounds that the verdict was against the great

weight of the evidence and because evidence of Hebert's failed drug screen was admitted

at trial. The Court disagrees and finds that there was sufficient evidence presented to

support the jury's verdict. Furthermore, the Court does not find that the trial was rendered

unfair by the admission of evidence of Hebert's positive drug screen.

Prior to trial, Plaintiffs moved to exclude any evidence or suggestion of substance

abuse or use by Hebert. Record Document 97, pp. 2, 7-9. Specifically, Plaintiffs sought to

prevent Defendant from introducing evidence that Hebert tested positive for

methamphetamine on a urine drug screen administered during a visit to a treating pain

management physician after the accident at issue occurred. Id. at 3, 7-9. On this issue, the

Court reviewed written motions and briefing, and held oral argument before ruling.[3]

Plaintiffs now attempt to essentially re-urge many of the same arguments they made

---

Goodner v. Hyundai Motor Co., 650 F.3d 1034, 1039-40 (5th Cir. 2011) (noting that, under Rule 50, a "jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did") (citation omitted); see also Ford v. J.B. Hunt Transp., Inc., No. CIV.A. 12-414-RLB, 2015 WL 300411 (M.D. La. Jan. 22, 2015).

[3] Plaintiffs challenged introduction of the positive drug screen and reference to drug use and abuse through Dr. Savant, a physician practicing neurology and psychiatry, and through Dr. Bozzelle, the treating pain management physician. The Court ultimately ruled that Dr. Bozzelle could testify regarding the positive drug screen because he "relies on drug screens in his normal course of business and in assessing treatment options." Record Document 140, p. 2. The Court also found that "the evidence is relevant in that it relates to treatment sought as a result of the injuries that are the subject of this case." Id. As to Dr. Savant, the Court limited her testimony in a number of aspects, both before and during trial. See Record Documents 140, p. 2; 151, p. 5; 210, pp. 17-22; 208, pp. 297-354.

during this litigation regarding the positive drug screen. The Court is not persuaded that it erred in its prior rulings and does not find that admission of evidence of the positive drug screen denied Plaintiffs a fair trial. Additionally, the jury's verdict was not clearly contrary to the law and the evidence. Accordingly, Plaintiffs' alternative motion for a new trial is **DENIED**.[4]

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Judgment Notwithstanding the Verdict, or, Alternatively, For New Trial [Record Document 200] is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana this 4th day of June, 2018.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE

---

[4] The Court would similarly deny a new trial under the federal standard.